IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**RICKY GLASS,**            )
                            )
    **Plaintiff,**       )
                            )
**v.**                      )   Civil Action No. 5:19-00305
                            )
**MIKE FRANCES, *et al.*,** )
                            )
    **Defendants.**      )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' Motion to Dismiss Amended Complaint (Document No. 13), filed on June 7, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 15.) In Response, Plaintiff filed his Second Amended Complaint. (Document No. 24.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion to Dismiss (Document No. 13) should be granted.

**PROCEDURAL BACKGROUND**

On May 13, 2019, Plaintiff, acting *pro se*, filed his Motion to Proceed Without Prepayment of Fees and Amended Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983.[1] (Document Nos. 4 and 5.) In his Amended Complaint, Plaintiff named the following as Defendants: (1) Mike Frances; and (2) Cody Blevins. (Document No. 5.) Plaintiff alleges that

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Defendants are violating his due process rights under the Fourteenth Amendment and subjecting him to inhumane conditions of confinement in violation of his Eighth Amendment rights. (Id.) Specifically, Plaintiff states as follows:

> On April 8, 2019, around 11:00 – noon, Mr. Cody Blevins threw poop under my cell door and in the crack of the door. It got it all over me and my stuff. And Mr. Frances has had me in the hole, AD-SEG, without giving us our AD-SEG hearing. Plus, I'm AD-SEG for throwing food and there has been people coming and going for fighting with the officers. There were three guys [that] killed a man in C-4 and only got 30 days in the hole.

(Id., pp. 4 - 5.)

By Order entered on May 15, 2019, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and the Clerk to issue process the same day. (Document Nos. 6 - 9.) On June 7, 2019, Defendants filed their Answer, Motion to Dismiss, and Memorandum in Support. (Document Nos. 12 – 14.) In their Motion to Dismiss, Defendants argue that Plaintiff's Amended Complaint should be dismissed based on the following: (1) Plaintiff's "failure to allege sufficient facts to state a claim" (Document No. 14, pp. 5 – 7.); (2) Plaintiff's "failure to exhaust administrative remedies" (Id., pp. 7 – 10.); (3) Plaintiff has failed to establish liability under Section 1983 (Id., pp. 10 – 11.); and (4) Defendants are entitled to qualified immunity (Id., pp. 11 – 14.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 6, 2019, advising him of the right to file a response to Defendants' Motion to Dismiss. (Document No. 15.)

Despite being warned by the Court in accordance with Roseboro that inaction could result in dismissal of his Amended Complaint, Plaintiff did not file a response to Defendants' Motion to Dismiss (Document No. 13). After noting Plaintiff's lack of activity in this case, the undersigned issued an Order on September 5, 2019, directing Plaintiff to "show cause in writing on or before

2

September 23, 2019, as to why this civil action should not be dismissed for failure to prosecute." (Document No. 17.) The undersigned specifically notified Plaintiff that if he had abandoned his intent to proceed in this action, the Court found no need to consider the merits of the pending Motion to Dismiss (Document No. 13). (Id.) Petitioner again failed to file a Response.

By Proposed Findings and Recommendation entered on September 25, 2019, the undersigned recommended that the above action be dismissed for failure to prosecute and Defendants' Motion to Dismiss be denied as moot. (Document No. 18.) On October 7, 2019, Plaintiff filed his Response to the Court's Order dated September 5, 2019, directing Plaintiff to "show cause in writing on or before September 23, 2019, as to why this civil action should not be dismissed for failure to prosecute." (Document No. 19.) In his Response, Plaintiff stated that he did not receive a copy of Defendants' Motion to Dismiss until September 26, 2019. (Id.) Plaintiff further explained that since the filing of the above action, he was transferred to different prison facility and housed in a "lockdown section" of the prison. (Id.) Plaintiff states that he has now been release from "lockdown" and would like to pursue the above action. (Id.) Plaintiff requested a 90-day extension of time to file a Response to Defendants' Motion to Dismiss. (Id.) In support, Plaintiff stated that he is currently seeking to obtain counsel to represent him in this action. (Id.)

By Order entered on October 8, 2019, the undersigned determined that Plaintiff had shown good cause for his failure to prosecute and ordered that the Proposed Findings and Recommendation (Document No. 18) filed on September 25, 2019 be withdrawn and stricken from the docket. (Document No. 20.) To the extent Plaintiff sought a 90-day extension of time to file a Response to Defendants' Motion to Dismiss, the Court granted in part and denied in part. (Id.) To the extent Plaintiff requested a 90-day extension of time, the Court denied his request. (Id.) The Court, however, granted Plaintiff an extension of time until November 8, 2019, to file his Response

to Defendants' Motion to Dismiss. (Id.)

On November 1, 2019, Plaintiff filed his Second Amended Complaint.[2] (Document No. 24.) In his Second Amended Complaint, Plaintiff named the following as Defendants: (1) Betsy Jividen, Commissioner of the State of West Virginia Department of Corrections; (2) Mike Frances, Superintendent of the Southern Regional Jail; and (3) Cody Blevins, Correctional Officer. (Id., p. 2.) Plaintiff states that Defendants are violating his constitutional rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. (Id., p. 5.) In support, Plaintiff states that he was housed in lockdown pod A1 on or about April 8, 2019. (Id., p. 3.) On this date, Plaintiff states that several inmates inside the pod became "disruptive, during which time CO Blevins came to my cell door and threw feces/poop under and threw my cell door getting it all over me and my stuff." (Id.) Plaintiff states that the requested that CO Blevins report the incident to the shift commander for investigation reasons, but CO Blevins refused. (Id.) Plaintiff states that he and several other

---

[2] Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party may amend his pleadings "once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] motion to amend should be denied only where it would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Marfork Coal Co. v. Smith*, 2011 WL 744727 (S.D.W.Va. Feb. 23, 2011)(J. Berger)(citations omitted). There is no indication that Plaintiff obtained written consent from Defendants prior to filing his Second Amended Complaint. Further, Plaintiff clearly did not file a Motion requesting permission to amend prior to filing his Second Amended Complaint. The Court, however, finds that Plaintiff's Second Amended Complaint should be permitted. It appears Plaintiff filed his Second Amended Complaint in response to Defendants' Motion to Dismiss. It is well recognized that where a *pro se* Complaint can be remedied by an amendment, the Court may not dismiss the Complaint with prejudice, but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); *also see Goode v. Central Va. Legal Aide Society, Inc.*, 807 F.3d 619 (4th Cir. 2015). The Court, therefore, will consider Plaintiff's Second Amendment Complaint when considering the merits of Defendants' Motion to Dismiss.

inmates "began to create a further disruption at which point other correctional officers responded." (Id.) Plaintiff acknowledges that the shift commander responded and inquired of Plaintiff concerning the reason for the disturbance. (Id.) Plaintiff states that he notified the shift commander of CO Blevins' alleged misconduct, and CO Blevins "was relieved of his post and clean up was then issued where Plaintiff's cell was then searched and personal effects, pictures, letters, court papers, were thrown in the trash by correctional officers." (Id., pp. 3 – 4.) Plaintiff complains that the requested a grievance form, but Plaintiff was "shortly transferred out of SRJ and could not access the grievance procedure for the Regional Jails." (Id., p. 4.) Plaintiff, therefore, states that he "could not present the facts relating to this complaint denying Plaintiff his due process rights by not giving or providing Plaintiff a way to file internal remedies." (Id.) Plaintiff requests declaratory, injunctive, and monetary relief. (Id., pp. 5 – 6.)

On November 27, 2019, Defendants filed their Motion to Strike and Memorandum in Support. (Document Nos. 25 and 26.) By separate Order entered this day, the undersigned has denied Defendants' Motion to Strike.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

**1.     Official-Capacity Claims:**

In his Second Amended Complaint, Plaintiff states that he is suing Defendants in their individual and official capacities. (Document No. 24, p. 2.) Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[3] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"

---

[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"). To the extent Plaintiff seeks monetary damages from Defendants in their official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed.[4] See Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Accordingly, the undersigned respectfully recommends that the District Court dismiss Plaintiff's official capacity claim against Defendants to the extent Plaintiff seeks monetary relief.

**2.     Administrative Remedy Process:**

In his Second Amended Complaint, Plaintiff alleges that Defendants violated his constitutional right to due process by denying him access to administrative remedy process.[5] (Document No. 24, p. 4.) Inmates, however, have no constitutional right to access or participation in the administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994)("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Taylor v. Lang, 483 Fed.Appx. 855, 858 (4th Cir. 2012)(finding that a

---

[4] The undersigned notes that Plaintiff does seek injunction relief. (Document No. 24, pp. 5 – 6.)

[5] Plaintiff appears to allege that such violated his right to due process under both the Fifth and Fourteenth Amendments. The undersigned notes that the Fifth Amendment applies to the federal government, whereas the Fourteenth Amendment applies to the states. Plaintiff's claims are clearly against State defendants. Thus, Plaintiff has failed to state a plausible claim under the Fifth Amendment.

8

state inmate's access and participation in the prisoner's grievance process are not constitutionally protected); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A prison employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Section 1983. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Accordingly, the undersigned finds that Plaintiff's claim that Defendants violated his constitutional rights by rendering the administrative remedy process unavailable should be dismissed for failure to state claim.

3. **Eighth Amendment:**

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct.

1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged

condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege [1] a serious or significant physical or emotional injury resulting from the challenged conditions or [2] demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979.

The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); also see Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration"). As stated above, prisoners are entitled to "adequate food, clothing,

shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In the instant case, Plaintiff contends that he was subjected to cruel and unusual conditions of his confinement when he was exposed to human waste. Taking Plaintiff's factual allegations as true, Defendant Blevins threw human feces through Plaintiff's cell door onto Plaintiff and his surroundings. "[A] prisoner's exposure to human waste may give rise to an Eighth Amendment violation. Williams v. Collier, 357 Fed.Appx. 532, 535 (4th Cir. 2009)(citing DeSpain v. Uphoff, 264 F.3d 965, 974-75 (10th Cir. 2001)); Salmons v. Western Regional Jail, 2019 WL 5616916, * 6 (S.D.W.Va. Oct. 30, 2019)(J. Chambers)("[T]he mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment.). Exposure to human waste evokes both health and standards of dignity concerns embodied in the Eighth Amendment. McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991). When determining whether exposure to human waste is cruel and unusual, such depends on both the duration and the severity of the exposure. See Willey v. Kirkpatrick, 801 F.3d 51, 68 (2015). In Willey, the Second Circuit set forth two examples:

> An exposure to human waste that lasts merely ten minutes, but that exposure takes the form of working in a well while facing "a shower of human excrement without protective clothing and equipment," a jury may find an Eighth Amendment violation. *See Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990). . . .  Likewise, a less severe exposure may be constitutionally permissible if rectified in short order but may become cruel and unusual with the prolonged passage of time. *See McCord*, 927 F.2d at 846-47(holding that occasional sewage backup onto cell floor on which inmate slept over two-year period, amount other conditions, violated the Eighth Amendment).

Id.; also see Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)(finding that confinement in a "filthy, overcrowded cell and a diet of [1,000 calories per day] might be tolerable for a few days and intolerably cruel for weeks or months); Williams v. O'Brien, 2014 WL 2864897, * 10 – 11 (N.D.W.Va. June 24, 2014)(an inmate's placement in a cell without running water, no sink, no toilet, half a mattress, being provided a bag for his bathroom needs, and

no one removing the used bag for two days failed to state an Eighth Amendment claim where the inmate's exposure to such conditions was limited to two and a half days and inmate failed to allege "any harm more serious than temporary discomfort").

In Shakka v. Smith, the Fourth Circuit determined plaintiff failed to establish an Eighth Amendment violation where human waste was thrown onto plaintiff and his surroundings. Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995). The plaintiff alleged that he requested a shower and cleaning supplies following the incident. Id. at 166. The plaintiff acknowledged that he was provided with water and cleaning materials, but complained that he was not allowed to shower for three days. Id. The Fourth Circuit first determined that although the plaintiff may have preferred a shower, the Court could not determine that the plaintiff was "deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred" where the plaintiff was undisputedly provided with water and cleaning materials. Id. at 168. The Fourth Circuit then concluded there was no evidence that the denial of a shower for three days subjected the plaintiff to a substantial risk of serious harm. Id. Similar to the facts in Shakka, Plaintiff's exposure to human waste was for a brief period of time. Following Plaintiff's exposure to human waste, Plaintiff states that he notified the Shift Commander of the incident and "shortly after" clean up was issued. (Document No. 24, p. 3.) Taking Plaintiff's factual allegations as true, the undersigned finds that the duration and the severity of Plaintiff's exposure to human waste is insufficient to constitute a constitutional violation. Plaintiff fails to allege either a serious injury or a substantial risk of serious harm as a result of being briefly exposed to human waste. Plaintiff further acknowledges that staff did not ignore his concerns of being exposed to the human waste. See Shakka, 71 F.3d at 166 (finding discomfort lasting just a few days that does not result in any notable harm, cannot from the basis for a constitutional claim); Lewis v. Western Regional Jail,

2012 WL 3670393, *8 (S.D.W.Va. July 24, 2012)(dismissing inmate's claim that he was subjected to numerous instances of unsanitary prison conditions, including the exposure human waste thrown by other inmates, where the record was void of any indication that plaintiff suffered an injury or a substantial risk of harm from the exposure to the challenged conditions); see also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."); Beverati v. Smith, 120 F.3d 500, 504-05, n. 5 (4th Cir. 1997)(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment); Johnson v. Fields, 2017 WL 5505991, * 10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, * 3 – 4 (D.S.C. June 11, 2009), aff'd., 355 Fed.Appx. 681 (4th Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty day period did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL 669448, * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases); Williams v. Anderson, 2006 WL 709209, * 13 (S.D.W.Va. March 16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.

**4.     Due Process:**

In his first Amended Complaint, Plaintiff alleges that Defendants were violating his due process rights by holding him in segregation for four months without a hearing. (Document No. 5,

p. 5.) Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the

inmate's claims have no merit. Id.

Applying the principles set forth in Sandin, the undersigned finds that Plaintiff's placement in administrative segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the length of his time in segregation, he does not complain that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[7] Administrative segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship.[8] See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement

---

[7] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:
> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

[8] In Plaintiff's Response filed on October 7, 2019, Plaintiff acknowledges that he is no longer in segregation. (Document No. 19.)

16


ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. To the extent Plaintiff complains that Defendants misapplied their own polices, practices, and customs concerning administrative segregation, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned respectfully recommends that Plaintiff's due process claim be dismissed for failure to state a claim.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT**

Defendants' Motion to Dismiss (Document No. 13), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 2, 2019.

_____
Omar J. Aboulhosn
United States Magistrate Judge